

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00261-CR

_____

TYRONE E. GEORGE, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1737689

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

Tyrone E. George appeals his conviction for unlawful possession of a firearm by a felon. *See* Tex. Penal Code Ann. § 46.04(a). In two issues, George contends that the trial court abused its discretion by admitting a gun into evidence after the State had failed to prove the first link in the gun's chain of custody and that the trial court erroneously denied his motion for a directed verdict. We will affirm.

## I. Background

While conducting "routine surveillance on a suspected drug house," Fort Worth Police Officer Christian Delgadillo saw a car pull up to the house. Two individuals got out of the car and entered the house. A short while later, the individuals came out of the house and left in the car. Officer Delgadillo followed them. After observing the driver commit two traffic violations, Officer Delgadillo contacted a marked police unit to stop the car. Officer Francisco Sifuentes responded and stopped the car, and Officer Delgadillo stayed nearby to observe the stop.

Other officers, including Officer Robert McElyea and Officer Nowicki,[1] responded while Officer Sifuentes was speaking with the driver. George was the passenger, and Officers McElyea and Nowicki observed him while other officers talked with the driver. At some point, Officer Nowicki asked George to get out of the car, and George told him, "I have a weapon on me." Officer Nowicki removed a gun from

---

[1]Officer Nowicki did not testify at trial, and the record reflects only his last name.

the waistband of George's pants, and George got out of the car. George was arrested, and having been previously convicted of felony robbery, he was charged with possession of a firearm by a felon.

At trial, a redacted version of the video from Officer Nowicki's body camera was admitted and played for the jury. An unredacted version was admitted for record purposes, and a still photograph from that version depicting Officer Nowicki holding a large, wood-handled pistol was admitted and published to the jury. Officer Delgadillo confirmed that the gun depicted in the photograph was the same one that he had received from Officer McElyea for storage in the police department's property room. He testified that the gun was a firearm and that when preparing it for storage, he had "remove[d] any ammunition from the chamber and from the magazine" and had engaged the firearm's "locking mechanism so it [wouldn't] fire accidentally."

Officer Delgadillo placed the gun into a box for storage. Attached to the box was a Weapon Evidence form on which Officer Delgadillo had recorded the gun's serial number, manufacturer, model, and caliber. He identified the gun as a "Taurus Handgun" with a "9mm" caliber. When inspecting the gun at trial before it was offered into evidence, Officer Delgadillo confirmed that it was the same gun that he had received from Officer McElyea and that the box he had placed it in had not been tampered with. He later also testified that it is standard practice for officers to check whether seized firearms are stolen by calling in the firearm's serial number and

3

confirmed that the serial number written on the box was the same one that he had heard Officer Nowicki call in when George was arrested.

Officer McElyea also testified that the gun was the same one that Officer Nowicki had removed from George. According to Officer McElyea, the gun was "pretty distinct" because "[i]t ha[d] a wood handle[,] which you don't see very often," and it was "a larger handgun versus a smaller handgun [that] we might usually see."

When the State offered the gun into evidence, George objected that the State had not laid the proper "predicate in regards to the chain of custody." The trial court overruled his objection and admitted the gun into evidence.

A jury convicted George and assessed his punishment at twenty-five years in prison. The trial court entered a judgment consistent with the jury's verdict, and this appeal followed.

## II. Discussion

In his first issue, George contends that the trial court erroneously admitted the gun without proof of the first link in the chain of custody. George asserts in his second issue that even if the gun was properly admitted, the evidence was insufficient to prove that it was a firearm.[2]

---

[2]Although George expressly complains in his second issue that the trial court erroneously denied his motion for directed verdict, he acknowledges in his argument that a challenge to a trial court's ruling on a directed-verdict motion is a challenge to the evidentiary sufficiency. *See Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App. 2003).

4

## A. Admission of Evidence

### 1. Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

A trial court should admit only properly authenticated evidence. *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). "Testimony that an item is what it is claimed to be" satisfies the authentication requirement. Tex. R. Evid. 901(b)(1); *see Stanley v. State*, 606 S.W.2d 918, 919 (Tex. Crim. App. 1980) (holding that complainant's testimony that "the long barrel bolt-action shotgun admitted in evidence looked like the gun [that] had been pointed at her during the robbery" was sufficient to admit it into evidence); *Outland v. State*, 810 S.W.2d 474, 475 (Tex. App.—Fort Worth 1991, pet. ref'd) (holding that because officer identified gun as that retrieved from getaway vehicle, State did not need to show chain of custody). Thus, "Texas does not require a showing of chain of custody for

admission of evidence that is readily identifiable." *Jolliff v. State*, No. 05-21-01159-CR, 2023 WL 2926459, at *2 (Tex. App.—Dallas Apr. 13, 2023, no pet.) (mem. op., not designated for publication) (citing *Hammett v. State*, 578 S.W.2d 699, 708 (Tex. Crim. App. 1979)).

But if the party seeking admission cannot identify the evidence "through distinctive markings . . . or if the evidence is fungible, as are drugs or tests results," chain-of-custody proof is required. *Davis v. State*, 992 S.W.2d 8, 10–11 (Tex. App.— Houston [1st Dist.] 1996, no pet.) (citing *Hammett*, 578 S.W.2d at 708). The chain-of-custody requirement generally applies to indistinguishable objects. *See, e.g.*, *Foley v. State*, Nos. 01-11-00113-CR, 01-11-0014-CR, 2012 WL 1564685, at *4 (Tex. App.—Houston [1st Dist.] May 3, 2012, pet. ref'd) (mem. op., not designated for publication) (heroin sample); *Frasier v. State*, No. 03-09-00354-CR, 2010 WL 3058256, at *2 (Tex. App.— Austin Aug. 5, 2010, no pet.) (mem. op., not designated for publication) (bag of methamphetamine); *Clemens v. State*, No. 03-05-00156-CR, 2008 WL 2065986, at *5–6 (Tex. App.—Austin May 15, 2008, no pet.) (mem. op., not designated for publication) (gasoline samples). Ultimately, the trial court must decide "whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012).

## 2. Analysis

George argues that the chain of custody was inadequate because the State had failed to prove the beginning of the chain. He specifically asserts that "Officer Delgadillo was not the first link in the chain of custody, and the purported first link in the chain of custody [Officer Nowicki] did not testify." George maintains that "[b]ecause there is no evidence concerning the beginning of the chain of custody . . . the authentication requirement was not met in this case." The State responds that George did not allege that the gun had been tampered with and that unless there is evidence of tampering, most questions concerning care and custody go to the evidence's weight, not to its admissibility. The State maintains that because Officer McElyea testified that he recognized the gun as the one that Officer Nowicki had removed from George, the State was not required to prove the chain of custody. We agree with the State.

The State need only prove the chain of custody if it does not otherwise authenticate the evidence, such as by providing a witness who testifies to the evidence's authenticity. *See Davis*, 992 S.W.3d at 10–11. When the gun was admitted, the State had presented sufficient evidence to support a "reasonable jury determination" that the gun was authentic. *See Tienda*, 358 S.W.3d at 638. Specifically, video from Officer Nowicki's body camera that was played for the jury[3] reflects that George told Officer

---

[3]George objected to the video on the grounds that it was improper for Officer McElyea to authenticate video taken from Officer Nowicki's body camera. The trial

7

Nowicki, "I have a weapon on me," and that Officer Nowicki removed a gun from the waistband of George's pants. The full video admitted for record purposes reflects Officer Nowicki taking the gun back to his patrol vehicle for inspection. The gun is visible in that video and appears to be a large, wood-handled pistol. The video also reflects Officer Nowicki removing and inspecting a round of ammunition from the gun's magazine. Officer Delgadillo confirmed that the gun depicted in the photograph taken from that video was the same one that had been collected at the scene, that he had placed into evidence storage, and that was offered into evidence at trial. He specifically confirmed, "It's the . . . same make and model, [and it] has the same serial number." He also confirmed, "It's the same box that I put it in . . . , and I secured it with tons of tape, [and I] wrote my name on it. The tape hasn't been tampered with until now."

Officer McElyea was standing next to Officer Nowicki when the gun was taken from George, and Officer McElyea recognized it because it was "pretty distinct." According to Officer McElyea, "[i]t ha[d] a wood handle[,] which you don't see very often. And it's a larger handgun versus a smaller handgun we might usually see." Officer McElyea's description matches the gun reflected in Officer Nowicki's body-camera video.

_____

court overruled his objection and admitted the video. George does not contest the trial court's ruling on appeal.

8

The State's evidence was sufficient for the trial court to have determined that the gun was what the State purported it to be, and the trial court did not abuse its discretion in admitting it. *See* Tex. R. Evid. 901(a); *see also Outland*, 810 S.W.2d at 475 ("We also note that because an officer identified the exhibit as that retrieved from the getaway vehicle, chain of custody need not be shown."). Accordingly, we overrule George's first issue.

## B. Evidentiary Sufficiency

### 1. Standard of Review and Applicable Law

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative

9

force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To prove the unlawful possession of a firearm by a felon, the State must prove that the defendant had been convicted of a felony and possessed a firearm in the five years between his conviction and his release from confinement or supervision, whichever is later. *See* Tex. Penal Code Ann. § 46.04(a). George contests only the offense's firearm element. A firearm is "any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use." *Id.* § 46.01(3).

### 2. Analysis

George asserts that the State failed to prove that the gun admitted at trial was a firearm. He contends that the State offered only conclusory witness testimony and no analysis to prove that the gun was a firearm. According to George, the State offered no evidence that the gun "functioned at all, let alone as a firearm."

The State, however, was not required to prove that the gun was operational at the time of the offense to prove that it was a firearm. *See, e.g.*, *Walker v. State*, 543 S.W.2d

10

634, 637 (Tex. Crim. App. 1976) (holding that an automatic pistol that was "missing a firing pin and without a clip" at the time of the offense constituted a firearm); *Castillo v. State*, No. 11-18-00164-CR, 2020 WL 4038853, at *2 (Tex. App.—Eastland July 16, 2020, pet. ref'd) (mem. op., not designated for publication) ("[I]t is not necessary for a device to be operable at the time of the offense for it to be considered a firearm."); *Aylesworth v. State*, No. 03-12-00050-CR, 2013 WL 3929107, at *4 (Tex. App.—Austin July 24, 2013, no pet.) (mem. op., not designated for publication) (same); *Hutchings v. State*, 333 S.W.3d 917, 922 (Tex. App.—Texarkana 2011, pet. ref'd) (same); *Bollinger v. State*, 224 S.W.3d 768, 775 (Tex. App.—Eastland 2007, pet. ref'd) (same); *Grantham v. State*, 116 S.W.3d 136, 144 (Tex. App.—Tyler 2003, pet. ref'd) (same); *Thomas v. State*, 36 S.W.3d 709, 711 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (same).

And the record reflects ample evidence to prove that the gun was a firearm. Officer McElyea testified that the gun was a firearm, specifically a handgun. A handgun, by definition, is a firearm. Tex. Penal Code Ann. § 46.01(5); *Thomas*, 36 S.W.3d at 711. Officer Delgadillo also testified that the gun was a firearm that he had secured by "remov[ing] any ammunition from the chamber and from the magazine and [engaging the] locking mechanism so it [didn't] fire accidentally." Officer Delgadillo also recorded on the Weapon Evidence form that the gun was a "9mm" "handgun" manufactured by "Taurus." The jury also had the ability to examine the gun itself. Finally, before getting out of the car, George himself referred to the gun as a weapon when Officer Nowicki asked if he was carrying anything.

11

On this record, we conclude that the evidence was sufficient to prove that the gun was a firearm. *See, e.g.*, *Liggins v. State*, No. 05-92-02236-CR, 1995 WL 238631, at *3 (Tex. App.—Dallas Apr. 21, 1995, no pet.) (not designated for publication) (holding that witness's "[d]escribing a gun as a 'pistol' and a 'revolver' establishes that the accomplice used or exhibited a firearm during the commission of the robbery"); *Livingston v. State*, 728 S.W.2d 144, 146 (Tex. App.—Fort Worth 1987, no pet.) ("The jury had the legal definition of firearm before it as well as the revolver itself. We find that the evidence was sufficient to prove that [the State's exhibit] was a firearm."). We overrule George's second issue.

### III. Conclusion

Having overruled George's two issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 13, 2024